**SO ORDERED.**

**SIGNED this 6th day of May, 2024.**



_____
Mitchell L. Herren
United States Bankruptcy Judge

**DESIGNATED FOR ONLINE PUBLICATION ONLY**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| IN RE:<br><br>ANDREW HEATH ALEXANDER<br>JENNIFER LYNN ALEXANDER<br><br>Debtors. | Case No. 22-10612<br>Chapter 7 |

**ORDER GRANTING MOTION FOR RELIEF FROM AUTOMATIC STAY
FILED BY SANTANDER CONSUMER USA INC. (Doc. 70)**

Secured creditor Santander Consumer USA Inc. moved for relief from the bankruptcy stay with respect to a vehicle subject to an Illinois certificate of title that debtor purchased in Kansas prior to filing bankruptcy. The chapter 7 trustee objected, contending that Santander's security interest was unperfected on the date of the petition and avoidable by the trustee as a hypothetical lien creditor under 11 U.S.C. § 544, and therefore, Santander's motion should be denied. Santander and

1

the trustee submitted the dispute to the Court on stipulated facts and briefs. The central issue is a choice-of-law question: Does Illinois or Kansas law apply to determine whether Santander's security interest in the vehicle was perfected on the date of the petition? As explained below, Kansas law applies and Santander's lien was perfected on the date of the petition under Kansas law. Therefore, the Court overrules the trustee's objection and grants Santander's motion for relief from the automatic stay.[1]

## I. Jurisdiction

Santander's motion for stay relief is a core proceeding arising under title 11 over which this Court has subject matter jurisdiction.[2] Venue is proper in this District.[3]

## II. Stipulated Material Facts[4]

On March 10, 2020, an Illinois certificate of title was issued to Hertz Vehicles LLC on a new 2020 Mitsubishi Outlander. BNY Mellon Trust Co. was noted as the first lienholder on the Illinois title. Hertz sold the vehicle and assigned the title to Kansas dealer Orr Nissan of Wichita on May 26, 2022. BNY Mellon released its lien on May 25, 2022, on the face of the Illinois title.

---

[1] Santander appears by its attorney Michael P. Gaughan. Patricia E. Hamilton appears for the trustee.
[2] 28 U.S.C. §§ 1334(b), 157(a) and (b)(2)(G), and Amended Order of Reference, D. Kan. S.O. 13-1.
[3] 28 U.S.C. § 1409(a). Though the parties stipulated to *jurisdiction* under this statutory provision, § 1409 is a venue statute.
[4] Doc. 87.

2

On June 13, 2022, Orr Nissan sold the vehicle to co-debtor Andrew Alexander (hereafter "debtor") of Derby, Kansas. Debtor executed a Retail Installment Sales Contract on June 13 and granted Orr Nissan a security interest in the vehicle. On the same date, Orr Nissan assigned its rights under the contract to Santander and executed the "Dealer's Assignment" on the back of the Illinois title, listing debtor as purchaser and owner and Santander as the lienholder.

On June 30, 2022, Santander delivered a Notice of Security Interest (NOSI) with the Kansas Department of Revenue (KDOR) via the KDOR's E-lien Site, indicating Santander's security interest in the vehicle and that debtor was the owner. The KDOR confirmed Santander's NOSI and payment of the required fee on June 30. No party submitted anything in Illinois after the sale to debtor.

On July 7, 2022, debtor and his spouse filed a Chapter 13 bankruptcy in this District, and in 2023, converted their case to Chapter 7. On the date of filing bankruptcy, debtor possessed the vehicle and the Illinois title, but he had not yet applied for a Kansas title with the KDOR, and, therefore, no Kansas certificate of title had been issued.

On November 8, 2022, debtor submitted an application for title and the applicable fee to the KDOR. Based on the KDOR Title Snapshot and Registration Inquiry, the Kansas certificate of title lists debtor as the owner and notes Santander's security interest in the vehicle.[5]

---

[5] Under Kansas law, all car titles that are subject to a security interest are electronic titles that are held and maintained by the KDOR in its Passenger Vehicle Title and Registration System until the lien is satisfied, at which time a paper title is sent to the car owner. *See* KAN. STAT. ANN. § 8-135d(a) (2022 Supp.); KAN. ADMIN. REG. § 92-51-24(b) (2023).

3

On August 16, 2023, Santander filed this motion for relief from stay with respect to the vehicle.[6] On that date, the vehicle was covered by the Kansas certificate of title issued in November of 2022.

### III.    Analysis

The trustee's objection to Santander's motion for relief from the automatic stay is asserted in her capacity as a hypothetical lien creditor exercising her lien avoidance powers under 11 U.S.C. § 544. Under § 544, a bankruptcy trustee has the rights and powers of a lien creditor as of the date of the bankruptcy petition; these rights are determined by state law.[7] Under the Kansas Revised Uniform Commercial Code (UCC), the trustee has priority over a secured creditor with an unperfected security interest in the collateral on the date of the petition.[8] Thus, if Santander's security interest in the vehicle was unperfected, the trustee's interest is superior and the trustee may avoid Santander's lien, preserving the same for the benefit of the estate.[9] Because state law determines whether Santander held a prepetition, perfected security interest in the vehicle, the Court must first determine whether Illinois or Kansas certificate-of-title law applies to the issue of perfection.[10] Before applying the choice-of-law statute, the Court will summarize the parties' arguments.

---

[6] Doc. 70.
[7] *Morris v. Hicks (In re Hicks),* 491 F.3d 1136, 1140 (10th Cir. 2007). *See* KAN. STAT. ANN. § 84-9-102(52)(C) (defining a "lien creditor" to include a trustee in bankruptcy from the date of the filing of the bankruptcy petition).
[8] *Id. See* KAN. STAT. ANN. § 84-9-317(a)(2)(A) and § 84-9-322(a)(2).
[9] *See* 11 U.S.C. § 544(a) and § 551.
[10] *In re Hicks,* 491 F.3d 1136, 1140; *Morris v. CIT Group/Equip. Fin., Inc. (In re Charles),* 323 F.3d 841, 842-43 (10th Cir. 2003).

A. The Parties' Arguments

Santander claims Kansas certificate-of-title law controls because the debtor resided in Kansas, the debtor purchased the vehicle in Kansas from a Kansas dealer, and the debtor applied for a Kansas title. It further argues that it properly perfected its security interest under Kansas law by delivering a NOSI to KDOR within 30 days of the sale and delivery of the vehicle, as provided by KAN. STAT. ANN. § 8-135. Further, if Santander was otherwise required to perfect under Illinois law as the trustee claims, Santander argues it would have to apply for a new Illinois title under 625 ILL. COMP. STAT. ANN. 5/3-202(b) (West 2014), which, according to Santander, would be unreasonable considering the debtor resided in Kansas and intended to apply for a Kansas title.[11]

The trustee disagrees and advances alternative arguments, asserting Santander's attempts to perfect in Kansas were without effect because the vehicle was subject to an Illinois title until the debtor, after filing the bankruptcy petition, applied for a Kansas title. According to the trustee, this means Illinois law applies to the perfection dispute. Trustee then argues that Santander could have protected itself by either ensuring the filing of a Kansas title application contemporaneously with the sale of the vehicle, or by filing a NOSI in Illinois instead of Kansas.

---

[11] Debtor, as the owner of the vehicle and intending to operate the vehicle upon any highway in this state, would have been required to register the vehicle and pay the registration fees and personal property taxes in order to lawfully operate the vehicle in Kansas. *See* KAN. STAT. ANN. § 8-127(a), § 8-129 and § 8-126(q) (broadly defining "highway") (2022 Supp.). As part of that registration, the applicant must establish his ownership by certifying that he has a certificate of title for the motor vehicle or filing an application for a certificate of title. § 8-129(b).

5

Although the debtor eventually applied for and received a Kansas title, such application, the trustee argues, does not relate-back and perfect Santander's security interest because, when the bankruptcy petition was filed, the vehicle was still subject to the Illinois title and, thus, Illinois law would control. Under Illinois law, the trustee contends Santander's interest would not be perfected because, although Santander's predecessor in interest noted Santander's lien on the back of the paper Illinois title, nobody took any other steps to perfect that lien in Illinois.

    B.    <u>Choice-of-Law and Applicable State Certificate-of-Title Law Regarding Perfection of the Security Interest</u>

Both parties agree that Kansas choice-of-law rules control but disagree whether that leads to the conclusion that Santander should have perfected its security interest under Kansas or Illinois certificate-of-title statutes. Kansas Revised UCC § 84-9-303 (2022 Supp.) is the choice-of-law statute that governs perfection and priority of security interests in goods, including motor vehicles, covered by a certificate-of-title statute.[12]

It provides:

> (a) Applicability of section. This section applies to goods covered by a certificate of title, even if there is no other relationship between the jurisdiction under whose certificate of title the goods are covered and the goods or the debtor.
>
> (b) When goods covered by certificate of title. Goods become covered by a certificate of title when a valid application for the certificate of title and the applicable fee are delivered to the appropriate authority. Goods cease to be covered by a certificate of title *at the earlier of the time* the certificate of title ceases to be effective under the law of the issuing

---

[12] The Illinois choice-of-law statute is identical to Kansas statute § 84-9-303. *See* 810 ILL. COMP. STAT. ANN. 5/9-303. KAN. STAT. ANN. § 84-9-102(a)(44) defines "goods" as "all things that are movable when a security interest attaches" and includes a motor vehicle.

jurisdiction *or the time the goods become covered subsequently by a certificate of title issued by another jurisdiction.* [Emphasis added].

(c) Applicable law. The local law of the jurisdiction under whose certificate of title the goods are covered governs perfection, the effect of perfection or nonperfection, and the priority of a security interest in goods covered by a certificate of title *from the time the goods become covered by the certificate of title until the goods cease to be covered by the certificate of title.* [Emphasis added].

The plain language of the statute makes clear that the applicable state law is the law of the jurisdiction that issues the certificate of title covering the vehicle. As the trustee correctly points out, subsection (a) provides that the jurisdiction of the certificate of title need not have any relationship to the debtor or the vehicle. Thus, Illinois certificate-of-title laws may apply even where the vehicle covered by the Illinois title is not located in Illinois and the debtor has no connection to Illinois. Santander's argument that Illinois law should not be applied to a Kansas debtor purchasing a vehicle in Kansas from a Kansas dealer finds no support under § 84-9-303(a).

Instead, subsection (b) requires the Court to determine what certificate(s) of title covered the vehicle to determine which state's certificate-of-title law governs perfection of Santander's security interest in the vehicle. The Official Comment to UCC § 9-303(b) provides, in part:

> Subsection (b) explains when goods become covered by a certificate of title and when they cease to be covered. Goods may become covered by a certificate of title, even though no certificate of title has issued. Former Section 9-103(2)(b) provided that the law of the jurisdiction issuing the certificate ceases to apply upon "surrender" of the certificate. This Article eliminates the concept of "surrender." *However, if the certificate is surrendered in conjunction with an appropriate application for a certificate to be issued by another jurisdiction, the law of the original*

7

*jurisdiction ceases to apply because the goods became covered subsequently by a certificate of title from another jurisdiction.* [Emphasis added].[13]

Nothing in § 84-9-303 suggests that the choice-of-law question is determined by anything other than whether the vehicle is covered, or became subsequently covered, by a certificate of title. There is no timing requirement in the statute.

Here, the stipulated facts establish that two certificates of title covered the vehicle at varying times. The Illinois certificate of title initially covered the vehicle as of March 10, 2020, (the sale to Hertz) and continued to be covered by the Illinois title when dealer Orr Nissan sold the vehicle and assigned the title to debtor on June 13, 2022, by executing the dealer's assignment and delivering the title to debtor.[14] The Kansas certificate of title covered the vehicle, at the latest, as of November 8, 2022, when debtor, as owner of the vehicle, applied for the Kansas title and delivered the applicable fee to the KDOR.[15] No party disputes that the vehicle is currently covered by a Kansas certificate of title. Under subsection (b) of the choice-of-law statute, the vehicle ceased to be covered by the Illinois certificate of title when the vehicle "bec[a]me covered subsequently by a certificate of title issued by another jurisdiction [Kansas]."[16]

---

[13] U.L.A., U.C.C. § 9-303(b), cmt 3. *See also* § 84-9-303, cmt 3.
[14] The stipulated facts indicate that debtor was in possession of the Illinois title on the date of the petition, July 7, 2022.
[15] Section 84-9-303(b) states: "Goods become covered by a certificate of title when a valid application for the certificate of title and the applicable fee are delivered to the appropriate authority." The Kansas electronic certificate of title was then issued on November 18, 2022.
[16] The Court notes that when debtor applied for the Kansas title, he was required to surrender the Illinois title. *See* KAN. STAT. ANN. § 8-135(c)(6).

8

Other courts have applied UCC § 9-303 choice-of-law statute in a similar fashion.[17] These courts conclude that "a certificate of title on a vehicle issued by a foreign state ceases to control the issue of perfection of a security interest once application is made in the forum state for a new certificate of title."[18] This is a direct application of the language in subsection (b). A bankruptcy court in Missouri has likewise held:

> When the Debtor bought the [car], it was "covered" by the Illinois Certificate of Title. However, under § 9-303(b), when the Missouri Department of Revenue issued its Certificate of Title on May 16, 2005, the [car] ceased to be covered by the Illinois Certificate of Title and became covered by the Missouri Certificate of Title. At that point, Missouri law became the local law of the jurisdiction under whose certificate of title the [car] was covered and, under § 9-303(c), Missouri Law governs perfection of liens on it.[19]

Because in the present case the vehicle is now covered by a Kansas title, under subsection (c) of § 84-9-303, Kansas law, as the "local law of the jurisdiction under whose certificate of title the [vehicle is] covered" applies and governs perfection and priority of Santander's security interest in the vehicle.

---

[17] *See e.g. Gugino v. Wachovia Dealer Services, Inc. (In re Owen),* Adv. No. 09-6015, 2009 WL 2145705 (Bankr. D. Idaho July 15, 2009) (Applying § 9-303, Idaho law controlled perfection issue in trustee's action to avoid a perfected security interest in a vehicle as a preference; upon application for a new certificate of title in Idaho, prior California certificate of title on vehicle ceased to control the issue of perfection of the lien on the vehicle); *In re Cook,* No. 06-60710; 2007 WL 680170, at *2 (Bankr. W.D. Mo. Mar. 1, 2007) (car covered by Illinois certificate of title when debtor purchased it ceased to be covered by the Illinois title when the car subsequently became covered by a Missouri certificate of title; Missouri law governed perfection of liens on the car); *Metzger v. Americredit Fin. Servs., Inc.,* 615 S.E. 2d 20, 124-25 (Ga. Ct. App. 2005) (stating that under § 9-303 when a security interest in goods has been perfected in another state, Georgia law determines perfection and priority issues once the goods become covered by a Georgia certificate of title).
[18] *Owen,* 2019 WL 2145705, at *4.
[19] *Cook,* 2007 WL 680170, at *2.

The trustee argues that because her rights as a hypothetical lien creditor arose before the actual application for title was made in Kansas, Illinois law should govern perfection and priority. This argument conflates the choice of which state's perfection and priority rules apply (based on the state whose certificate of title covers the vehicle) with the substantive question of perfection and priority, based on the applicable state law determined under § 84-9-303. The timing of when the vehicle became covered by the Kansas title is not relevant under the choice-of-law statute, § 84-9-303. Timing *is* relevant under the substantive certificate-of-title statutes that govern perfection and priority. The trustee has not provided the Court with any authority that an "intervening" bankruptcy filing interrupts or changes the application of § 84-9-303 if a vehicle becomes covered by a certificate of title after the filing of a bankruptcy, but before a lien priority dispute such as in this case arises.

The Court has reviewed two Kansas bankruptcy court decisions that the trustee contends support the application of Illinois law under the Kansas choice-of-law statute. The trustee cites the *Williams* and *Nazarenko* cases[20] as authority that Kansas law does not apply here because there was no Kansas title covering the vehicle at the time of the filing of the bankruptcy petition; the only existing title document was an Illinois title. However, in both *Williams* and *Nazarenko* debtor *never* applied for a Kansas title. In *Williams,* the Kansas debtor purchased a vehicle

---

[20] *In re Nazarenko,* No. 21-20533, doc. 41 (Bankr. D. Kan. Jan. 18, 2023) (Unpublished) (Berger, J.); *Hamilton v. Global Lending Services, LLC (In re Williams),* No. 21-21115, Adv. No. 22-6041, doc. 18 (Bankr. D. Kan. Apr. 28, 2023) (Unpublished) (Berger, J.).

10

with a California title from a dealership and the dealership delivered the California title to debtor with the vehicle. Debtor did not file a title application in Kansas. The vehicle at all times remained covered by the California title and the bankruptcy court concluded that California law applied. In *Nazarenko,* the Missouri debtor purchased a vehicle with a New York title from a Kansas dealership, then subsequently moved and filed bankruptcy in Kansas. The debtor never retitled the vehicle in Missouri or Kansas and at all times the vehicle remained covered by the New York title. The bankruptcy court again concluded that New York law applied under the Kansas choice-of-law statute. In short, at all times in those two cases, there was only one certificate of title covering each vehicle and the law of the jurisdiction that issued the title applied. This key fact distinguishes those cases from this one.

However, even if the timing of the trustee's status as a lien creditor (upon filing of bankruptcy petition) was relevant under § 84-9-303, that statute would still dictate that Kansas substantive law applies under the facts of this case. A "certificate of title" is defined in § 84-9-102(a)(10). It states:

> "Certificate of title" means a certificate of title with respect to which a statute provides for the security interest in question to be indicated on the certificate as a condition *or result of the security interest's obtaining priority over the rights of a lien creditor with respect to the collateral. The term includes another record maintained as an alternative to a certificate of title by the governmental unit that issues certificates of title if a statute permits the security interest in question to be indicated on the record as a* condition or *result of the security interest's obtaining priority over the rights of alien creditor with respect to the collateral.* [Emphasis added].

11

Official UCC Comment 11 to UCC § 9-102(a)(10) states that this new definition of "certificate of title," applies to certificates where a security interest is "indicated" on the certificate as a "condition" of perfection, as well as certificates that "result" in the "indication" of the security interest on the certificate, such as where delivery of designated documents achieves perfection. Both qualify as a certificate of title under the definition.[21] Further, the definition of certificate of title includes paper certificates of title, electronic certificates of title maintained by the issuing agency, and a combination of tangible and electronic records. An electronic record so maintained as an alternative to the issuance of a paper certificate of title is a "certificate of title" regardless of whether the certificate-of-title statute provides that the electronic record is a certificate of title.[22]

Kansas is a jurisdiction that provides for perfection under the "delivery of designated documents" to the KDOR that results in the indication of the security interest on the electronic certificate of title. Under § 8-135(c)(5) and § 84-9-311, a lender's delivery of a NOSI and applicable fee to KDOR perfects the lender's purchase money security interest in the vehicle.

In short, the NOSI is, in the words of § 84-9-102(a)(10), "another record maintained as an alternative to a certificate of title by the governmental unit that issues certificates of title if a statute permits the security interest in question to be

---

[21] U.L.A., UCC § 9-102(a)(10), cmt. 11. *See also* § 84-9-303, cmt. 2 (stating that the new definition "applies not only to certificate of title statutes under which perfection occurs upon notation of the security interest on the certificate *but also to those that contemplate notation but provide that perfection is achieved by another method, e.g., delivery of designated documents to an official.*") [Emphasis added].
[22] *See* UCC § 9-102(a)(10), cmt. 11.

12

indicated on the record . . . ." In Kansas, the KDOR maintains the NOSI electronically until the buyer/owner applies for a Kansas certificate of title and KDOR issues the same with the lender's security interest noted thereon.[23] The Official UCC Comments under § 84-9-303 further state that "[g]oods may become covered by a certificate of title, *even though no certificate of title has issued.*"[24] For example,

> if the certificate is surrendered in conjunction with an appropriate application for a certificate to be issued by another jurisdiction, the law of the original jurisdiction ceases to apply because the goods became covered subsequently by a certificate of title from another jurisdiction.[25]

Reading the choice-of-law statute, § 84-9-303, together with the definition of "certificate of title" in § 84-9-102(a)(10), and the Official UCC Comments, the Court concludes that the NOSI record delivered by Santander on June 30, 2022 to the KDOR, acted as a "certificate of title" under Kansas law; thus, the Illinois title ceased to cover the vehicle under § 84-9-303(b). Because this occurred prior to the date of the bankruptcy petition and the trustee's hypothetical lien creditor status, even if the timing of the bankruptcy could affect the choice of law question, the NOSI negated the trustee's claim that the vehicle was covered by an Illinois certificate of title on the date of the bankruptcy petition and that therefore, Illinois substantive law applied.

---

[23] § 8-135(c)(5). The NOSI indicates the name of the lienholder or holder of the security interest, the make, model, and VIN of vehicle, and the owner of the vehicle and owner's address. *See* Doc. 87-2. The NOSI is a matter of public record, and third parties can search the KDOR database by vehicle to ascertain whether there is a lienholder on the vehicle.
[24] § 84-9-303, cmt. 3.
[25] *Id.*

13

The vehicle is currently covered by a Kansas title and was also covered by a Kansas title before the bankruptcy filing due to the manner in which the NOSI record is maintained as an alternative to a "certificate of title" under Kansas law. Therefore, under § 84-9-303(c), the Court will apply Kansas law in determining whether Santander held a perfected security interest in the vehicle on the date of the bankruptcy petition and whether its interest is superior to the chapter 7 trustee as a lien creditor.

> C. Perfection of a purchase money security interest in a vehicle under the Kansas Revised Uniform Commercial Code and KAN. STAT. ANN. § 8-135 (2022 Supp.)

Kansas Revised UCC § 84-9-311(a)(2) governs the manner in which a security interest is perfected in certificate-of-title property, such as motor vehicles. A secured creditor protects its interest by complying with the applicable certificate-of-title statute.[26] Specifically, § 84-9-311(a)(2) states: "Such security interest shall be deemed perfected *upon the mailing or delivery of the notice of security interest and tender of the required fee* to the appropriate state agency as prescribed by subsection (c)(5) of K.S.A. 8-135 . . ."[27]

Section 8-135 is the Kansas certificate-of-title statute and subsection (c)(5) governs perfection of a purchase money security interest in a newly purchased vehicle.[28] Subsection (c)(5) provides, in relevant part:

---

[26] KAN. STAT. ANN. § 84-9-310(b)(3) and § 84-9-311(a)(2) (2022 Supp.) Compliance with the certificate of title statute is the equivalent of filing a financing statement. *See* § 84-9-311(b).
[27] Section 84-9-311(a)(2) (Emphasis added).
[28] Under § 8-126(bb), a "notice of security interest" [NOSI] is specifically defined to include a notification from a dealer or secured party of a purchase money security interest [PMSI].

14

> . . . upon sale and delivery to the purchaser of every vehicle subject to a purchase money security interest as provided in article 9 of chapter 84 of the Kansas Statutes Annotated, and amendments thereto, *the dealer or secured party may complete a notice of security interest . . .* in a form prescribed by the division, describing the vehicle and showing the name and address of the secured party and of the debtor . . .
>
> The dealer or secured party, within 30 days of the sale and delivery, may mail or deliver the notice of security interest, together with a fee of $2.50 to the division. *The notice of security interest shall be retained by the division until it receives an application for a certificate of title to the vehicle and a certificate of title is issued. The certificate of title shall indicate any security interest in the vehicle.* Upon issuance of the certificate of title, the division shall mail or deliver confirmation of the receipt of the notice of security interest, the date the certificate of title is issued and the security interest indicated, to the secured party at the address shown on the notice of security interest. *The proper completion and timely mailing or delivery of a notice of security interest by a dealer or secured party shall perfect a security interest in the vehicle, as referenced in K.S.A. 2022 Supp. 84-9-311, and amendments thereto, on the date of such mailing or delivery.* [Emphasis added]

The stipulated facts, together with their attached documents, establish that Santander complied with § 8-135(c)(5) as it, within 30 days of the sale and delivery of the vehicle, submitted an NOSI with the applicable fee to the KDOR and as a result, perfected its security interest in the vehicle effective June 30, 2022.

Santander has been continuously perfected in the vehicle since at least June 30, 2022.[29] Nothing in the language of the certificate-of-title statute limits the

---

. . upon a vehicle that has been sold and delivered to the purchaser. *See Williamson v. Southwind Bank (In re Anstaett),* 651 B.R. 911 (Bankr. D. Kan. 2023) (distinguishing subsections (c)(5) governing PMSIs and (c)(6) governing non-PMSIs in the certificate of title statute, § 8-135).

[29] The Court notes that on the reverse side of the Illinois title Santander was noted as the lienholder in the upper left portion of the dealer assignment to debtor on June 13, 2022, and the parties so stipulated.

15

effectiveness of a timely-delivered and properly completed NOSI. As the title statute and Article 9 operate, the lender's NOSI is held indefinitely by the KDOR until a title application is made and a certificate of title is issued.[30] As the bankruptcy court concluded in *In re Jackson,* the certificate-of-title statute "unambiguously provides that a NOSI will perfect a lien until the certificate of title is issued."[31] Though the title statute in question in *Jackson* involved the title statute applicable to manufactured homes or mobile homes, KAN. STAT. ANN. § 58-4204 (2022 Supp), the language of that title statute mirrors the motor vehicle title statute, § 8-135.[32] It states:

> Upon sale and delivery to the purchaser of every manufactured home or mobile home subject to a purchase money security interest . . . the dealer or secured party may complete a notice of security interest . . . The dealer or secured party may, within 30 days of the sale and delivery, mail or deliver the notice of security interest, together with a fee … to the division. *The notice of security interest shall be retained by the division, until it receives an application for a certificate of title to the manufactured home or mobile home and a certificate of title is issued. . . The proper completion and timely mailing or delivery of a notice of security interest by a dealer or secured party shall perfect a security interest in the manufacture home or mobile home, as referenced in K.S.A.*

---

[30] *See Mid American Credit Union v. Bd. Of County Comm'rs,* 15 Kan. App. 2d 216, 806 P.2d 479, 484 (1991) (noting that Kansas created the lender's NOSI procedure to ameliorate the "gap" period between the sale and the purchaser applying for and obtaining a certificate of title, during which a security interest is otherwise unperfected).
[31] *In re Jackson,* 358 B.R. 412, 418-20 (Bankr. D. Kan. 2007), *as amended* (Feb. 22, 2007).
[32] The title statute governing manufactured homes or mobile homes was moved to the Kansas Manufactured Housing Act, § 58-4201 *et seq,* enacted in 1991. *See* § 58-4203(a) (expressly providing that manufactured homes and mobile homes shall not be subject to "the titling and registration requirements imposed by the statutes contained in article 1 of chapter 8 of the Kansas Statutes Annotated [motor vehicles] . . ."). Prior to that time they were treated as motor vehicles and subject to the vehicle title statute. *See In re Thomas,* 362 B.R. 478, 481-83 (10th Cir. BAP 2007) (discussing statutory history and background of titling and perfecting security interests in manufactured homes and noting that "the procedure for recording an ownership interest and for perfecting a security interest is similar to the procedure used for motor vehicles.").

16

*2022 Supp. 84-9-311, and amendments thereto, on the date of such mailing or delivery.*[33]

Further, under Kansas law, upon the sale and transfer of ownership of a vehicle for which a certificate of title has been issued (which title is in the possession of the transferor at the time of delivery of the vehicle), the seller or transferor of the vehicle is required to complete an assignment on the reverse side of the title and deliver the existing certificate of title to the buyer/new owner with delivery of the vehicle or at a time not to exceed 60 days after delivery of the vehicle.[34] The buyer or owner then applies for a new certificate of title. When the buyer or owner delivers an application for a new title, he is required to surrender the existing title with the application and pay the applicable fee.[35] The lender's security interest or lien is then noted on the Kansas title. Delivery of the surrendered title, application, and tender of the required fee shall perfect a security interest in the vehicle as referenced in § 84-9-311.

That is what transpired in this case. The dealer executed the assignment of the vehicle to debtor on the reverse side of the Illinois title and delivered the Illinois title to debtor with the vehicle. Debtors surrendered the Illinois title and applied for a Kansas certificate of title on November 8, 2022, and paid the applicable fee. The KDOR approved and issued the new title on November 18. Santander's security interest or lien was added to that title, and by statute, remained perfected as of the date of the filing of the NOSI, June 30, 2022. In short, the procedure for perfecting

---

[33] Section 58-4204(g) (emphasis added).
[34] § 8-135(c)(6)
[35] *Id.*

17

the security interest in the vehicle and obtaining a new certificate of title worked exactly as the title statute was designed and intended.

As noted above, the trustee also argues that Santander (or the dealer, its predecessor in interest) should have insisted on either causing a title application to be filed in Kansas at the time of sale (or at least prior to bankruptcy) or that Santander should have filed a NOSI in Illinois before the filing of the bankruptcy. Both of these arguments fail. First, trustee has cited no statutory or other legal authority that a dealer or financer has any authority to force a car buyer in Kansas to apply for a title.[36] Under the Kansas vehicle title statute, the dealer, having acquired a vehicle for which a title was issued by another state (Illinois), was also not required to obtain a Kansas certificate of title while the vehicle was in the dealer's possession and intended for sale.[37] Instead, the dealer's purchaser or transferee should present the assigned [Illinois] title to the KDOR when making application for a Kansas title.[38] If the buyer so requests, a dealer may commonly facilitate a power of attorney and forward the buyer's title application, but the timing of that application is the buyer's decision to make, based on the intentions of the buyer for the vehicle's use and applicable law. This is the reason the Kansas statutory scheme allows for the secured creditor to file the NOSI while awaiting the title application by the buyer of the vehicle.

---

[36] *See In re Jackson,* 358 B.R. 412, 421 (concluding that the lender had no duty to require or request the issuance of a certificate of title under manufactured housing title statute).
[37] § 8-135(c)(9)
[38] *Id. See also* § 8-135(c)(6).

18

As to the argument that Santander should have alternatively filed a NOSI in Illinois, the trustee has cited no provision of Illinois law that allows for the filing of NOSIs for perfection of a security interest in a vehicle.[39] There is nothing in the record before this Court that there was any perfection option for Santander under Illinois law other than applying for a new Illinois title, which would be an illogical mechanism under the circumstances of this case involving a Kansas buyer needing to register and obtain a Kansas title in order to lawfully operate the vehicle in this state.[40]

Because Kansas certificate-of-title law and Kansas Revised UCC Article 9 applies to the issue of perfection, Santander properly perfected its security interest in the vehicle by delivery of the NOSI and corresponding fee to the KDOR on June 30, 2022, prior to the debtors' bankruptcy filing. Santander's security interest in the vehicle is therefore superior to the rights of the trustee as a hypothetical lien creditor. The trustee's objection to Santander's motion for stay relief is OVERRULED.

Santander's motion for relief from the stay to enforce its *in rem* rights with respect to the vehicle is GRANTED. No other objections to Santander's motion were filed. The Court accepts as true the statements in the motion, and thus Santander is entitled to relief from the automatic stay.

---

[39] *See generally In re Lortz*, 344 B.R. 579, 583 (Bankr. C.D. Ill. 2006) (describing the procedure to perfect a security interest in accordance with Illinois certificate of title laws).
[40] *See* § 135(c)(6) (stating it shall be unlawful for any person to operate in this state a vehicle required to be registered or to transfer the title to any such vehicle to any person, unless a certificate of title has been issued as provided herein).

19

# # #